**WO** KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Long, | No. CV 20-00098-PHX-SPL (JZB) |
| Plaintiff, | |
| v. | **ORDER** |
| Corizon Health Services, | |
| Defendant. | |

Plaintiff Daniel Long, who was formerly in the custody of the Arizona Department of Corrections (ADC), brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendant moves for summary judgment, and Plaintiff opposes.[1] (Docs. 26, 29.)

**I.  Background**

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment medical care claim against Defendant based on allegedly deliberately indifferent treatment of Plaintiff's serious medical needs between March 16, 2019 and April 28, 2019. (Doc. 6; Doc. 29.) Defendant now moves for summary judgment as to that claim on the ground that there is no evidence that Defendant violated Plaintiff's Eighth Amendment rights in its provision of medical care.

. . . .

. . . .

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc) regarding the requirements of a response. (Doc. 28.)

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

. . . .

. . . .

. . . .

### III. Facts[2]

At all times relevant to this action, Plaintiff was in the custody of the ADC and Defendant Corizon was the contracted medical care provider for prisoners in the custody of the ADC until June 30, 2019. (Doc. 27 ¶¶ 1-2.)

On March 16, 2019, Plaintiff submitted a health needs request (HNR) requesting a refill for his Ibuprofen prescription, alleging migraines and back pain from "doing nothing." (*Id.* ¶ 3.) On March 18, 2019, LPN Tomlinson responded, informing Plaintiff the prescription was discontinued and he needed to submit another HNR requesting to be seen on the nursing line first in order to renew it. (*Id.*)

On March 25, 2019, Nurse McNutt responded to a medical Incident Command System (ICS) alert for Plaintiff. (*Id.* ¶ 4.) Plaintiff reported he was working out and doing pushups when his back went out and that he had pain, which improved with lying down and worsened with mobility. (*Id.*) Upon exam, Plaintiff was able to stand, and his straight leg raise was equal and strong, Plaintiff did not complain of past or present urinary incontinence, fever, vomiting, or tingling. (*Id.*) Plaintiff was prescribed Analgesic Balm ointment twice daily (bid) and Ibuprofen (NSAID-Motrin—pain) 600 mg bid prn (as needed), and was given a special needs order (SNO) for medical ice. (*Id.*) He was also told to submit HNRs as needed if new or worsening symptoms occurred. (*Id.*)

On March 27, 2019, Plaintiff submitted another HNR, stating he was experiencing back pain and needed to be seen; in response, he was scheduled for the nurse line. (*Id.* ¶ 5.) On March 28, 2019, Plaintiff submitted another HNR stating he was still in back pain, was

---

[2] Plaintiff did not file a controverting statement of facts as required by the Court's Local Rules of Civil Procedure and discussed in the Court's *Rand* Order. Because Plaintiff did not file a controverting statement of facts, the Court will consider Defendant's supported facts undisputed unless they are clearly controverted by Plaintiff's non-conclusory first-hand allegations in the verified Complaint or other evidence in the record. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (holding that where the nonmovant is a pro se litigant, the Court must consider as evidence in opposition to summary judgment all the nonmovant's contentions set forth in a verified complaint or motion).

requesting blood work, and needed to be seen and was informed he was scheduled for the nurse line. (*Id.* ¶ 6.) On March 29, 2019, RN Hunter saw Plaintiff for a Nurse Scheduled Sick Call in response to a HNR request; Plaintiff complained of back pain, stated that he fell in the shower two days prior, and reported improvement with heat. (*Id.* ¶ 7.) The assessment was altered mobility and, on top of his previous medications, Plaintiff was given a Ketorolac Trometh injection, (Toradol-pain) 60 mg now, SNO for bed rest for 3 days (expires 4/12), and nursing explained the Toradol injection was a muscle relaxant and that additional Keep on Person (KOP) medications would follow as well. (*Id.* ¶ 7.)

On April 2, 2019, RN McNutt saw Plaintiff for a Nurse Scheduled Sick Call in response to an HNR submitted on March 30; Plaintiff reported that he was dealing with a back injury, felt weak, and that he pulled something in his back. (*Id.* ¶ 8.) Plaintiff complained of back pain ranging from 1-5/10. Plaintiff still had active prescriptions for Ibuprofen and Analgesic Balm, and he was referred to the provider line. (*Id.*)

On April 4, 2019, Plaintiff submitted another HNR complaining of back and foot pain and requested a wheelchair; in response, he was scheduled on the nurses line. (*Id.* ¶ 9.) That same day, NP Ndemanu saw Plaintiff during an unscheduled provider sick call and Plaintiff reported right ankle pain. (*Id.*) NP Ndemanu ordered x-rays, 3V for the ankle. (*Id.*) Plaintiff was scheduled for a follow-up appointment for 4/9 at 7:30 a.m. to get the x-ray results. (*Id.*) Plaintiff was given SNOs for an ACE wrap and medical ice for 4/4/2019 to 4/12/2020. (*Id.*)

On April 6, 2019, RN Rowe saw Plaintiff in response to an HNR. (*Id.* ¶ 11.) Plaintiff complained of continued back pain and complained of "something feeling pinched" in his back and requested a wheelchair. (*Id.*) Upon examination, his right lower leg and foot had swelling and redness and Plaintiff's vitals were within normal limits. (*Id.*) A SNO for a wheelchair for 3 days (expires 4/12) was issued and he was scheduled for the provider line. (*Id.* ¶ 11.)

On April 7, 2019, Plaintiff submitted another HNR requesting his Ibuprofen keep on person medication be refilled; the medication was refilled. (*Id.* ¶ 12.) On April 9, 2019,

NP Ndemanu saw Plaintiff for a Nurse Treatment Call in response to a HNR; Plaintiff complained of right foot and heel swelling and back pain and Plaintiff denied fever, chills, loss of sensation or strength. (*Id.* ¶ 13.)  Plaintiff reported that rest and medication helped with pain. (*Id.*)  The plan was: Prednisone (steroid) 50 mg every morning for 5 days; labs ordered: urinalysis (which was found to be negative), an x-ray, CPK (stress to muscle tissue), diagnostic panel 2, continue Clindamycin and Ibuprofen. (*Id.*)  Plaintiff's labs were within normal limits except creatinine, which was low, but within acceptable parameters (*Id.*)  A follow-up was scheduled in 14 days. (*Id.*)

On April 9, 2019, Dr. Paul reviewed the ankle x-ray results. (*Id.*)  The x-ray findings were: no acute fracture or dislocation, ankle joint space and mortise are maintained, there is generalized leg and ankle soft tissue swelling, no radio dense foreign body, calcaneus and talus are intact, base of fifth metatarsal is intact as visualized. (*Id.*)  Plaintiff was notified of the results the next day. (*Id.*)

Also on April 9, 2019, Dr. Plosker reviewed the lumbar x-ray results and the findings were: "Lumbar vertebral body heights appear maintained.  No acute fractures are seen.  Intervertebral disc heights appear maintained.  AP projection demonstrates intact bony pedicles and sacroiliac joints.  Spot LS-Sl view without an upper displaced sacral fracture.  There are a few tiny anterior osteophytes.  Bilateral oblique view without an obvious pars defect." (*Id.* ¶ 15.)  Plaintiff was notified the next day. (*Id.*)

On April 16, 2019, Plaintiff submitted another HNR, requesting his Ibuprofen keep on person medication be refilled and the medication refill was requested. (*Id.* ¶ 16.)  On April 18, 2019, Plaintiff submitted an HNR alleging ADC staff took his wheelchair so that it could be given to someone else and did not give him another assistive device; in response, he was scheduled for the nurses line. (*Id.* ¶ 17.)

On April 26, 2019, NP Rowe saw Plaintiff for an ICS response; Plaintiff stated he was walking and his back locked up and then he passed out; Plaintiff complained of back pain and that movement made it worse. (*Id.* ¶ 18.)  NP Johnson was notified and he ordered Toradol injection, 1x; Renew Ibuprofen, but do not give for 12 hours; NP Johnson stated

that Plaintiff should be sent out ICS 911 to rule out sepsis. (*Id.*) It was noted NS 9% IV (fluids) wide open, blood pressure checks every 15 minutes. (*Id.*) Plaintiff was sent to Abrazo West Emergency Room for evaluation. (*Id.*)

On April 27, 2019, RN Dodd saw Plaintiff upon his return from Abrazo ER. (*Id.* ¶ 19.) Plaintiff reported that Abrazo providers informed him he had a kidney infection and gave him antibiotics; Plaintiff reported back pain upon return, but was improving compared to previous reports. (*Id.*) Plaintiff was prescribed additional medications of Cephalexin (Keflex- antibiotic) 500 mg four times daily (qid) and was deemed stable and returned to unit. (*Id.*) That same day, NP Johnson reviewed Plaintiff's hospital records and noted Plaintiff was treated at Abrazo for pyelonephritis/kidney infection and that Keflex was recommended for 10 days. (*Id.*) A follow-up appointment was scheduled for April 29, 2019 as recommended. (*Id.*)

At 2:33 p.m. that same day, Dr. Sherrill from Abrazo called the HUB at the prison site and reported that lab results showed that Plaintiff had grown bacteria on cultures and needed to return to the hospital for admission for IV antibiotics and further workup. (*Id.* ¶ 21.) Dr. Sherrill stated Plaintiff would likely get a PICC line and further lab testing; the labs showed Gram negative cocci in pairs and there was more than one culture. (*Id.*) Plaintiff was informed and the plan was to send him to Banner Estrella for admission. (*Id.*)

On May 1, 2019, RN Hunter responded to Plaintiff's HNR submitted on April 20 where he complained of his wheelchair being taken, but the appointment was cancelled as Plaintiff was already in the hospital at that point. (*Id.* ¶ 22.)

On May 5, 2019, RN Zeigler saw Plaintiff upon his return from hospitalization and he was admitted to the infirmary. (*Id.* ¶ 23.) Plaintiff had a PICC line to left upper arm and was able to ambulate into the unit without assistive devices. (*Id.*) Plaintiff's grip strength and foot push strength was equal and strong and he asserted the back pain was off and on, but that he had pain with movement, but was "doing as much as he could." (*Id.*) Plaintiff was prescribed: "Codeine/APAP (Tylenol #3) 30-300 mg qid prn, Nafcillin (antibiotic) injection 3 gram qid, Rifampin (TB) 300 mg bid, antibiotics for M[R]SA and

bacteremia for 6 weeks." (*Id.*)

That same day, NP Fletcher noted in her Medical Provider Infirmary Admission as follows: "This 35 year old male inmate admission to inpatient after discharged from Banner Thunderbird with diagnosis of epidural abscess within surgical incision for draining, MRSA as cause of Bacteremia. Patient also has right upper arm swelling with diagnosis of thrombophlebitis (blood clot blocking one or more veins), reports feeling well but not fully recovered." (*Id.* ¶ 24.) Plaintiff's treatment plan included: dressing changes daily, and PICC line change weekly for 6 weeks and to start Diazepam (muscle relaxant) bid, Docusate Sodium (Colace-stool softener) 100 mg bid, and a diagnostic panel 2 was ordered. (*Id.*) Plaintiff was to follow-up with neurosurgery and Infectious Disease Specialty in two weeks. (*Id.*) That same day, NP Fletcher submitted off-site consultation requests for radiology (venous ultrasound of right arm to rule out DVT), neurosurgery and infectious disease specialty follow-ups; an alternative treatment plan for the venous ultrasound was accepted thereafter on May 13, 2019, and Plaintiff was scheduled for a neuro surgery consult for May 14, 2019 and was scheduled for an infectious disease consult. (*Id.* ¶ 25.)

That same day, RN Slagle saw Plaintiff during nursing infirmary rounds, no signs or symptoms of infection were reported and Plaintiff's medications were Diazepam 5g x2 daily (expires 5/7/19), Tylenol with Codeine # 3 300 mg x4 daily prn (expires 5/9/19), Nafcillin Sodium 1 gm injection x4 daily (expires 6/13/19), and Rifampin 300 mg x2 daily (expires 5/18/19). (*Id.* ¶ 26.)

In May 2019, Plaintiff underwent L3-4 bilateral decompressions with facetectomy for evacuation of epidural abscess; a month after the surgery, Plaintiff continued to experience back pain. (*Id.* ¶ 114.) Dr. Long noted: "Patient has done well after surgery but as expected, continues to suffer from back pain. Patient Will require lumbar stabilization once his antibiotics are completed. I look forward to seeing him back in the office in 1 month with a repeat lumbar MRI with and without contrast." (*Id.*) In October 2019, Plaintiff underwent surgery for instability, L3/L4 Transforaminal and posterial

1 fusion with instrumentation. (*Id.* ¶ 122.)

2 **IV. Discussion**

3 Defendant asserts that it is entitled to summary judgment because Plaintiff failed to provide any evidence to prove that any Corizon policy was the moving force behind any alleged violation of his constitutional rights. Defendant asserts that it is also entitled to summary judgment because the records demonstrate decisions that Corizon staff made were based on the subjective and objective medical information they had available to them at the time and that they responded to Plaintiff's medical needs, and Plaintiff's allegations that Corizon staff should have done more sooner, including different testing and x-rays, does not represent cruel and unusual punishment or deliberate indifference, and Plaintiff's disagreement with his treatment or even negligence in his treatment are insufficient to support an Eighth Amendment claim.

13 In Response, Plaintiff asserts that his providers should have been alerted to the fact that something was more seriously wrong with him due to his HNRs. Plaintiff asserts that providers should have realized their treatment was not working and that his problems were beyond the scope of their knowledge and treatment and should have realized that Plaintiff needed to be referred to providers with more knowledge and a facility with superior equipment. Plaintiff asserts that he was in pain for 42 days (between March 16 to April 22) without a proper diagnosis and the prison did not have an MRI machine so that they could have detected the MRSA infection that was found at the hospital. Plaintiff asserts that he believes that Corizon employees were trying everything to delay sending him to an outside provider for medical services because it costs more to do this and Corizon was attempting to save money by not referring Plaintiff to an outside provider.

24 **A. Legal Standard**

25 To support a medical care claim under the Eighth Amendment, a prisoner must demonstrate "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to the deliberate-indifference analysis: an objective standard and a subjective

standard. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). A "'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal citation omitted).

Second, a prisoner must show that the defendant's response to that need was deliberately indifferent. *Jett*, 439 F.3d at 1096. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). Deliberate indifference may also be shown where prison officials fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096. "In deciding whether there has been deliberate indifference to an inmate's serious medical needs, [courts] need not defer to the judgment of prison doctors or administrators.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014 (quoting *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989)).

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. Of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The

1  indifference must be substantial. The action must rise to a level of "unnecessary and
2  wanton infliction of pain." *Estelle*, 429 U.S. at 105.

3  Even if deliberate indifference is shown, to support an Eighth Amendment claim, the prisoner must demonstrate harm caused by the indifference. *Jett*, 439 F.3d at 1096; *see Hunt*, 865 F.2d at 200 (delay in providing medical treatment does not constitute Eighth Amendment violation unless delay was harmful).

To support a § 1983 claim against a private entity performing a traditional public function, such as providing medical care to prisoners, a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138–39 (9th Cir. 2012) (extending the "official policy" requirement for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), to private entities acting under color of law). Under *Monell*, a plaintiff must show: (1) he suffered a constitutional injury; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional injury. *See Monell*, 436 U.S. at 691–94; *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001).

### B. Analysis

Plaintiff does not dispute that Corizon employees were responsive to his medical complaints regarding his back pain, but asserts that those employees should have realized that their treatment was not working and should have referred Plaintiff to an outside provider. Plaintiff produces no evidence of a standard of care that was violated or when a reasonable medical provider "should" have realized that Plaintiff's conditions were not being properly diagnosed. Even if such evidence were in the record, however, negligence and gross negligence cannot support a claim for cruel and unusual punishment. *Clement*, 220 F. Supp. 2d at 1105 (negligence, gross negligence, or even malpractice do not support a claim under § 1983); *Broughton*, 622 F.2d at 460 (*same*).

Although it took 42 days from the onset of Plaintiff's back pain for his referral to the hospital where Plaintiff's MRSA infection was discovered, there is no evidence in this record that the treatment provided to Plaintiff by Corizon's employees constituted deliberate indifference to Plaintiff's serious medical needs. There is likewise no evidence in this record that any of Plaintiff's providers were motivated by saving costs or that Corizon had a custom of failing to provide outside medical care in order to save costs.

Accordingly, Corizon's Motion for Summary Judgment will be granted.

**IT IS ORDERED:**

(1)  The reference to the Magistrate Judge is withdrawn as to Defendant's Motion for Summary Judgment (Doc. 26).

(2)  Defendant's Motion for Summary Judgment (Doc. 26) is **granted**, and the action is **terminated** with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 8th day of March, 2022.

Honorable Steven P. Logan
United States District Judge